## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**                                    **CASE NO. 19-CR-60234-KMM-1**

        **Plaintiff,**

**vs.**

**PATRICK RANIERI,**

        **Defendant.**

_____/

## DEFENDANT, PATRICK RANIERI'S
## MOTION FOR A DOWNWARD VARIANCE
## BASED ON THE TITLE 18 U.S.C. §3553(1)(a) FACTORS

**COMES NOW** the Defendant, **PATRICK RANIERI**, by and through his undersigned

counsel, and presents herewith, his Motion for a Downward Variance based on the Title 18 U.S.C.

§3553(1)(a) Factors, and states as follows:

### INTRODUCTION

At the start it should be clear, that Patrick Ranieri is sincerely remorseful for his criminal

conduct and acknowledges that the offense to which he has entered his plea of guilty is of a serious

nature.  Further, the Defendant wholly realizes the impact his poor decision to become involved in

this criminal conduct will have upon his future and the extraordinary embarrassment caused to his

family, and knows he has nobody to blame but himself.

The Defendant respectfully submits this motion for a downward variance and prays that

this Honorable Court will consider a sentence below the low-end of the advisory sentencing

guideline range.  This request is made in-part based on his desire to do the right thing by rendering

his substantial assistance to the Government which demonstrates his first steps down the road

towards rehabilitation and a law-abiding life.  Additionally, the manner in which the base offense

level is determined in this case as far as inclusion the carrier-weight in the base offense level computation is worthy of consideration as discussed below.

## **PROCEDURAL BACKGROUND**

1.      On September 12, 2019, the Defendant pled guilty to Counts One through Four of a four-count Indictment. Counts One through Four charge the defendant with possession with intent to distribute a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1).

2.      The day after his arrest on July 29, 2019, the Defendant was released from custody after posting a $100,000 10% bond cosigned by his wife, Adair Ranieri, with certain special conditions.  According to U.S. Probation Officer (USPO) Glenn Kohlhepp, the Defendant has complied with all court-ordered conditions of release.

3.      At paragraph 86 of the Presentence Investigation Report, it is provided that, "Based upon a total offense level of 25 and a criminal history category of I, the guideline imprisonment range is 57 to 71 months." [D.E. 20]

4.      The Defendant has not filed Objections to the Presentence Investigation Report, therefore there are no issues in that regard for the Court's determination.  However, the Defendant is requesting this Honorable Court to consider a downward variance and impose a sentence below the low-end of the sentencing guideline range as discussed below.

5.      It is anticipated that the Government will file a motion for reduction of sentence pursuant to U.S.S.G. §5K1.1 prior to the sentencing hearing in this cause.

6.      The sentencing hearing is presently scheduled for Thursday, November 21, 2019 at 2:00 p.m.

7.      The within motion for downward variance is filed in the utmost of good faith and in the interest of justice.

**I. _Defendant's Request for a Variance Based on the Drug Weight Calculation that Included the Carrier Medium (Sugar), thereby resulting in a Gross Inequity that can be Corrected by the Granting of a Downward Variance_**

Again it should be clear that the Defendant unequivocally accepts responsibility for his unlawful conduct, however would respectfully point out the extreme difference between the manner in which the weight of the controlled substance is determined in this case and the actual weight of the controlled substance. (A total of 722 grams that includes the carrier weight vs. an actual total of .193 grams of controlled substance.)

Paragraph 24 of the PSI states, "The total number of fentanyl lollipop boxes purchased by the UC during the investigation from Ranieri was five and Ranieri had another three boxes of fentanyl lollipops in his possession when he was arrested. Ranieri consented verbally and in writing to a search of his residence in Hollywood, and four more sealed boxes of fentanyl lollipops and two opened boxes with a total of 26 lollipops were seized. Each box of 400-micrograms lollipops and 600-micgrograms lollipops weighs 60 grams. The approximate amount of the mixture and substance containing fentanyl Ranieri possessed is 772 grams (12 boxes x 60 grams + 26 lollipops x 2 grams each). Therefore, the Defendant was held accountable for a mixture containing **772 grams** of fentanyl.

As noted in paragraph 10 of the PSI, fentanyl lollipops are a common term for Teva Pharmaceutical Fentanyl Lozenges. _Each lozenge contains a dosage of fentanyl suspended in a sugar solution on a stick. The lozenges that the UC arranged to purchase contained 400 micrograms (1 microgram = .000001 gram) of fentanyl suspended in two grams of sugar in each unit._ (There were also some lollipops that contained _600-micrograms_ of fentanyl in them.)

Therefore, although the Defendant was being held accountable for "772 grams of fentanyl," in reality there was approximately a total of **.193 grams of fentanyl.**

3

Computed as follows: 12 Boxes containing 30 lollipops each = 360 lollipops plus 26 loose lollipops = 386 lollipops.  Some of the lollipops contained *400 micrograms of fentanyl* and some of the lollipops contained *600 micrograms.* Therefore, each of the lollipops containing 400 micrograms of fentanyl had .0004 grams of fentanyl in them and each of the lollipops containing 600 micrograms of fentanyl had .0006 grams of fentanyl in them. (For ease of computation, .0005 will be used in this analysis.)

Although, each lollipop weighs 2 grams each, which is the weight of the sugar, there is only .0005 grams of fentanyl in each lollipop.

Therefore, 386 lollipops  x  .0005 grams of fentanyl in each  =  **A total of .193 grams of fentanyl.**

It is respectfully submitted, that although the guidelines do provide for the inclusion of the carrier weight, 2 grams of sugar in each lollipop in this instance, to hold the Defendant responsible for "772 grams of fentanyl," when in reality there was approximately a total of .193 grams of fentanyl, shouts out for some adjustment in the sentence to be applied by way of a variance.

Courts and the guidelines have dealt with issues regarding separating the weight of the mixture from the controlled substance so as to avoid disparate sentences due to the vagaries of mixture weights.

As early as 1993, the United States Sentencing Commission acknowledged that this type of procedure was improper. In response, the Commission issued Amendment 488, which provides that with regard to LSD, the paper impregnated with the drug should not be included in the weight. Specifically, the Commission stated, "Section 2D1.1(c) is amended in the notes following the Drug Quantity Table by inserting the following additional paragraph at the end:

> In the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table.

The Commission further amended the Commentary to §2D1.1 captioned "Background" by inserting the following paragraphs in-part at the end:

> Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level … Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for *other* controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level. Nonetheless, this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman*; §5G1.1(b)). (Emphasis supplied.)

In its explanation of the Reasons for the Amendment, the Commission stated that it, has found that the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself (*e.g.*, LSD is typically placed on blotter paper which generally weighs from 5 to 10 milligrams per dose; the weight of the LSD itself per dose is generally from 0.02 to 0.08 milligram; the Drug Enforcement Administration describes a standard dose of LSD as containing 0.05 milligram of LSD). As a result, basing the offense level on the entire weight of the LSD and carrier medium produces unwarranted disparity among offenses involving the same quantity of actual LSD but different carrier weights, as well as sentences that are disproportionate to those for other, more dangerous controlled substances, such as PCP, heroin, and cocaine. … Consequently, in cases involving LSD contained in a carrier medium, this amendment establishes a weight per dose of 0.4 milligram to be used for purposes of determining the base offense level. The dosage weight of LSD selected by the Commission exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram (*i.e.*, the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most

other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States*, 111 S. Ct. 1919 (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed) … Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level.

It is respectfully submitted that precisely the same situation is present in the case-at-bar when the Government includes the weight of the 2 grams of sugar in each lollipop.  Clearly, the overwhelming bulk of the weight calculated in the Presentence Investigation Report is *sugar*, which is not an illegal substance.

The guidelines and courts have also applied the same rationale, that the entire weight that includes the carrier is not appropriate in all situations that use mixtures to deliver the substance: (i) For PCP, the guidelines state that the court should "refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual)." *See* U.S.S.G. § 2D1.1(c) n. (B); (ii) For Hydrocodone and Oxycodone, the guidelines state that the court should "refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture." *Id*.; (iii) For Anabolic Steroids "that is not in a pill, capsule, tablet, or liquid form (e.g., patch, topical cream, aerosol), the court shall determine the base offense level using a reasonable estimate of the quantity of anabolic steroid involved in the offense. In making a reasonable estimate, the court shall consider that each 25 milligrams of an anabolic steroid is one 'unit'." U.S.S.G. § 2D1.1(c) n. (F), and (iv) For fresh or wet marijuana, "marihuana having a moisture content that renders the marihuana unsuitable for consumption without drying (this might occur, for example, with a bale of rain-soaked marihuana or freshly harvested marihuana that had not been dried), an approximation of the weight of the marihuana without such excess moisture content is to be used." See U.S.S.G. § 2D1.1, Application Note 1.

The Eleventh Circuit has stated in *United States v. Rolande-Gabriel,* 938 F.2d 1231 (11th Cir. 1991), when analyzing a weight determination issue in a case involving liquid waste carrier, The Sentencing Guidelines Statutory Mission and Policy Statement clearly and plainly indicate that the primary purpose of the guidelines system is to create a scheme of "uniform and rational" sentencing. In applying the term "mixture" to the facts of this case, we are faced with a conflict between the commission's comment indicating that the term "mixture" means the same as it does in 21 U.S.C. §841, and the Sentencing Guidelines' well-documented purpose of rationality and uniformity in sentencing. *Rolande-Gabriel* at 1235.

The Court found that if the sentencing court strictly adheres to the wording of the Guidelines, "then all mixtures are to be included, despite the fact that disparate and irrational sentences will result." However, "[i]f we read 'mixture' in conjunction with the purposes behind the Sentencing Guidelines, then section 2D1.1 should be applied in a manner which creates the greatest degree of uniformity and rationality in sentencing." *Id.* Ultimately, the court in *Gabriel* decided that when "[f]aced with a choice between contradictory statements of intent and policy by the Guidelines Commission, we adopt the more rational alternative." *Id.* at 1235. The Court's reasoning was that, "This hyper-technical and mechanical application of the statutory language defeats the very purpose behind the Sentencing Guidelines and creates an absurdity in their application: the disparate and irrational sentencing arising out of a "rational and uniform" scheme of sentencing." *Id.*

It is respectfully submitted that this Court's application of a common-sense approach, which removes the weight of the sugar to estimate the true weight of the Fentanyl for sentencing purposes, would also be in line with the rationale discussed by the U.S. Supreme Court in *Neal v. United States*, 516 U.S. 284, 116 S. Ct. 763 (1996), which addresses weighing LSD. The Court explained: the Commission in 1993 decided it could no longer follow that general rule for LSD offenses and fulfill the statutory directive to promote proportionate sentencing. The Commission determined that 'because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled

7

substance itself, . . . basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP.' *Id.* at 292-293.

Again, although the guidelines do provide for the inclusion of the 2 grams of sugar in each lollipop in the weight calculation, in this instance to hold the Defendant responsible for "772 grams of fentanyl," when in reality there was approximately a total of .193 grams of fentanyl, warrants some adjustment in the sentence by way of a downward variance.

## II. *The Defendant's Substantial Assistance as a Title 18 U.S.C. §3553(a) Factor*

It is submitted that in addition to the Government's motion for reduction of sentence pursuant to U.S.S.G. §5K1.1, this Court may consider the Defendant's cooperation as bearing upon the *characteristics of the defendant.*

Specifically, this Honorable Court may take the Defendant's cooperation into consideration when applying the Title 18 U.S.C. §3553(a)(1) factors with regard to the history and characteristics of the Defendant in accord with *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014).

The court in *United States v. Robinson,* 741 F.3d 588 (5th Cir. 2014) held a sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion and that a sentencing court's failure to recognize its discretion to consider a defendant's cooperation under § 3553(a)(1) is a significant procedural error.

Likewise, the court in *United States v. Massey,* 663 F.3d 852 (6th Cir. 2011) , where Massey argued that the district court ignored his request for a variance in consideration of his cooperation and assistance simply because the government had not filed a 5K1.1 motion, the court stated, "A

district court retains the discretion to take into account a defendant's cooperation as a § 3553(a) mitigating factor. *United States v. Petrus,* 588 F.3d 347, 356 (6th Cir.2009).

**III.** ***The Defendant's Lack of Criminal History as a Title 18 U.S.C. §3553(a)(1) Factor***

As noted in the Presentence Investigation Report, the Defendant has no criminal history whatsoever.

It is submitted that this lack of a criminal record is appropriate for the Court's consideration, and should be given some weight in this Court's §3553(a) analysis.

A District Court may weigh a defendant's lack of a criminal record in its §3553(a) analysis, even when the defendant has been placed into a criminal history category of I. *United States v. Huckins*, 529 F.3d 1312, 1318-19 (10th Cir.2008). See also *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), where the guideline range was 41-51 months, and the court *sua sponte* granted a variance to probation, the court held that this was not unreasonable in part because it was defendant's first conviction, and that a Criminal History Level I "did not fully account or his complete lack of criminal history."

In *United States v. White*, 506 F.3d 635, 645 (8th Cir.2007), it was held appropriate for the District Court to vary from the 108 to 135 month guideline range to a 72 month sentence based partly on the defendant's lack of criminal record; the court rejected the government's argument that the court could not consider the defendant's lack of a prior record because it had already been taken into account by the guidelines. The court found otherwise and stated, "[p]ursuant to §3553(a) a district court may consider factors already taken into account in calculating the advisory guideline range." *United States v. Polito*, 215 Fed. Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007) (unpub.)

**IV.** ***The need to protect the public from further crimes of the defendant.***
***There is a Low Risk of Recidivism.***
***Title 18 U.S.C. § 3553(a)(2)***

Another important fact regarding this Defendant is that there is a low risk of recidivism and a correspondingly lesser need of incarceration to protect the public. 18 U.S.C. § 3553(a)(2).

Based on the applicable sentencing policy statements and the other Title 18 U.S.C. §3553(a) factors, it is respectfully submitted that the likelihood of this Defendant engaging in criminal conduct in the future is extremely small, as is demonstrated by his law-abiding life before this most unfortunate criminal conduct.

**V.** ***Title 18 U.S.C. §3553(a)***
***The nature and circumstances of the offense and the history***
***and characteristics of the Defendant.***

Title 18 U.S.C. §3553(a)(1) provides that the court in determining the particular sentence to be imposed, shall consider "*the nature and circumstances of the offense and the history and characteristics of the defendant*."

The United States Supreme Court in *Pepper v. United States,* 131 S.Ct. 1229 (2011), emphasized the need for individualized sentencing based not only on the crime, but on the particular defendant as well. They said that Federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Citing: *Gall v. United States*, 128 S.Ct. 586, 589 (2007).

As this Honorable Court is well-aware, the Court has full authority to consider any evidence in deciding whether the Guidelines "properly reflect §3553(a) considerations." *Rita v. United States,* 551 U.S. 338, 351 (2007).

The Supreme Court has expressly directed sentencing courts that they may not presume that the guidelines range is reasonable. *Gall v. United States,* 128 S. Ct. 586 (2007). Rather,

sentencing courts are directed to make an "individualized assessment" of the sentence warranted by §3553(a) "based on the facts presented." *Gall v. United States,* 128 S. Ct. at 597 (2007). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008). Ultimately, courts are required to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote general and specific deterrence, rehabilitate the defendant and protect the public. 18 U.S.C. §3553(a).

## CONCLUSION

It is respectfully submitted that there is a well-founded basis upon which this Court may grant this request for a variance.  Patrick Ranieri is a first-time non-violent offender, who presents a very minimal risk to re-offend due to his ability to earn a wholly legitimate income in the future.

It is also submitted, that in light of the nature and circumstances of the offense and the history and characteristics of Mr. Ranieri as well as the other factors discussed above, a sentence below the low-end of the sentencing guideline range would reflect the seriousness of the offense; promote respect for the law, and provide just punishment for the offense. Such a lesser sentence would afford a more than adequate deterrence to any future criminal conduct of the Defendant and protect the public as well.  In sum and substance, such a sentence would be in accord with the principals set forth in Title 18 U.S.C. §3553.

Again, a sentence below the low-end of the sentencing guideline range would be sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in Title 18 U.S.C.A. §3553(2)(A-D).

**WHEREFORE**, Defendant, **PATRICK RANIERI,** respectfully prays that this Honorable Court grant him a downward variance and impose a sentence below the low-end of the sentencing guideline range.

Respectfully submitted,

FRANK J. GAVIRIA, P.A.
14 N.E. 1st Avenue, Suite #300
Miami, Florida 33132
Telephone: (305) 379-4441
Facsimile: (786) 509-8088
Email:  thefloridalawyer@yahoo.com
(Counsel for Defendant, *Patrick Ranieri.*)

/s/ ***Frank J. Gaviria***
Frank J. Gaviria, Esq.
 Fla. Bar No. 979058


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of November, 2019.  I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

FRANK J. GAVIRIA, P.A.
14 N.E. 1st Avenue, Suite #300
Miami, Florida 33132
Telephone: (305) 379-4441
Facsimile: (786) 509-8088
Email:  thefloridalawyer@yahoo.com
(Counsel for Defendant, *Patrick Ranieri.*)

/s/  ***Frank J. Gaviria***
Frank J. Gaviria, Esq.
Fla. Bar No. 979058

## <u>SERVICE LIST</u>

**United States of America v. Patrick Ranieri**
**Case No. 19-CR-60234-KMM-1**
**United States District Court, Southern District of Florida**

Donald F. Chase, II, A.U.S.A.
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33394
Telephone: (954) 660-5693
E-mail: donald.chase@usdoj.gov

Gabriel Fernandez
U.S. Probation Officer
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, FL 33128
Telephone: (305) 523-5315
E-mail: gabriel_fernandez@flsp.uscourts.gov